Argued and submitted May 13, decision of the Court of Appeals affirmed, in part on different grounds; judgment of the circuit court affirmed July 29, 1994

Jeff STOCKTON,
an individual,
Donald Stone, an individual,
Lauren Burr, an individual,
Susan Burr, an individual,
William Weldon, an individual,
Oregon Liquor Control Commission ex rel Jeff Stockton,
and Portland Public Schools ex rel Jeff Stockton,
*Petitioners on Review,*

*v.*

SILCO CONSTRUCTION COMPANY,
an Oregon corporation, and
United States Fidelity and Guaranty Company,
a Maryland corporation,
*Respondents on Review.*

(CC 9108-04931; CA A75975; SC S40872)

877 P2d 71

Mark R. Humphrey, Portland, argued the cause and filed the petition for petitioners on review.

Elizabeth H. Yeats, of Seifer, Yeats, Whitney & Mills, Portland, argued the cause and filed the response for respondents on review.

Rives Kistler, Assistant Attorney General, Salem, filed a brief for *amicus curiae* State of Oregon. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GILLETTE, J.

**GILLETTE, J.**

In this public contracts case, a subcontractor on several public works projects allegedly failed to pay the statutorily required prevailing rate of wage to five of its employees who worked on the projects. The employees brought the present action, seeking to recover the unpaid prevailing wages directly from the general contractor. The trial court granted summary judgment in the general contractor's favor. On appeal, the Court of Appeals affirmed, holding that the employees of the subcontractor could not recover unpaid prevailing wages from the general contractor under the pertinent statute, ORS 279.365(1) (set out *infra*, 319 Or at 370), after the completion of the public works contracts and that the employees could not recover those wages from the general contractor as third-party beneficiaries of the prevailing wage provisions in the public works contracts. *Stockton v. Silco Construction Co.*, 123 Or App 504, 860 P2d 851 (1993). We allowed review and now affirm the decision of the Court of Appeals, in part on different grounds.

Defendant Silco Construction Company (Silco) is a general building contractor that engages in public and private construction in Oregon. In 1989, 1990, and 1991, Silco was the general contractor on five public works projects. On each project, Silco subcontracted with B & R Excavating (B & R) to perform excavation and backfill work. Plaintiffs were employees of B & R who worked on those projects.

Oregon has adopted its own "Little Davis-Bacon Act," ORS 279.348 to 279.365, which, like its federal counterpart, the Davis-Bacon Act, 40 USC § 276a *et seq,* is aimed at ensuring that workers on governmental projects are paid at least the prevailing wage in the area in which the project is carried out for the workers' respective crafts.

Under ORS 279.350, workers on all public works projects must be paid not less than the "prevailing rate of wage," as defined in ORS 279.348(1).[1] ORS 279.352 further

---

[1] ORS 279.348(1) provides in part:

" 'Prevailing rate of wage' means the rate of hourly wage, including all fringe benefits under subsection (4) of this section, paid in the locality to the majority of workers employed on projects of a similar character in the same trade or occupation, as determined by the Commissioner of the Bureau of Labor and Industries."

requires that the specifications for every public works contract contain a provision "stating the existing prevailing rate of wage" and that the contract itself contain a provision "that such workers shall be paid not less than such specified minimum hourly rate of wage." The parties agree that the public works contracts at issue here contained prevailing wage provisions intended to meet the requirements of ORS 279.352.[2] In addition, each of the subcontracts between Silco and B & R required B & R to pay the prevailing rate of wage to its employees on the public works projects.

According to plaintiffs, and despite the foregoing contractual provisions, B & R failed to pay them the prevailing rate of wage for their work on the projects. Consequently, plaintiffs commenced the present action in August 1991, seeking to recover their unpaid wages from Silco.[3] As relevant here, plaintiffs sought to recover from Silco on two theories. First, plaintiffs claimed that Silco was liable for the unpaid wages under ORS 279.365(1) (set out *infra*). Second, plaintiffs claimed that they were entitled to collect the unpaid wages from Silco as intended third-party beneficiaries of the prevailing wage provisions in the public works contracts between the contracting public agencies and Silco.

Silco moved for summary judgment, arguing that the right of action provided by ORS 279.365(1) was available to plaintiffs only while the construction projects were ongoing and that the prevailing wage provisions in the public works contracts did not require Silco to be directly responsible for paying the prevailing rate of wage to the employees of a subcontractor like B & R. The trial court granted summary judgment in Silco's favor.

On appeal, the Court of Appeals affirmed. With regard to plaintiffs' claims under ORS 279.365(1), the Court of Appeals held that the right of action provided by that statute is available "only when payments from the public agency to the general contractor remain due, and the contractor retains the possibility of recourse against the noncomplying subcontractor." *Stockton v. Silco Construction Co.,* *supra*, 123 Or App at 508. With regard to the third-party

---

[2] The actual language of the contracts is not in the record.

[3] Apparently, plaintiffs had no recourse against B & R.

beneficiary claims, the court held that the prevailing wage provisions in the public works contracts "require the payment of the prevailing wage rate by the direct employer, which in this case is the subcontractor," and that plaintiffs "are simply not entitled to have [Silco] perform a promise on their behalf that the contracts do not require it to perform on behalf of employees other than its own." *Id.* at 508-09. We allowed review to consider those important issues of first impression.

We begin with plaintiffs' claims against Silco under ORS 279.365(1). That statute provides:

"The Commissioner of the Bureau of Labor and Industries or any other person may bring a civil action in any court of competent jurisdiction to require a public agency under a public contract with a contractor to withhold twice the wages in dispute if it is shown that the contractor or subcontractor on the contract has intentionally failed or refused to pay the prevailing rate of wage to workers employed on that contract and to require the contractor to pay the prevailing rate of wage and any deficiencies that can be shown to exist because of improper wage payments already made. In addition to other relief, the court may also enjoin any such contractor or subcontractor from committing future violations. The contractor or subcontractor involved shall be named as a party in all civil actions brought under this section. In addition to other costs, the court may award the prevailing party a reasonable attorney fee at the trial and on appeal. However, no attorney fee may be awarded against the Commissioner of the Bureau of Labor and Industries under this section."[4]

---

[4] The remainder of ORS 279.365 provides:

"(2) The court shall require any party, other than the Commissioner of the Bureau of Labor and Industries, that brings a civil action under this section, to post a bond sufficient to cover the estimated attorney fees and costs to the public agency and to the contractor or subcontractor of any temporary restraining order, preliminary injunction or permanent injunction awarded in the action, in the event that the party bringing the action does not ultimately prevail.

"(3) In addition to any other relief, the court in a civil action brought under this section may enjoin the public agency from contracting with the contractor or subcontractor if the court finds that the Commissioner of the Bureau of Labor and Industries would be entitled to place the contractor or subcontractor on the ineligible list established under ORS 279.361 (1). If the court issues such an injunction, the commissioner shall place the contractor or subcontractor on the list for a period of three years, subject to the provision of ORS 279.361 (2).

"(4) 'Public agency' has the meaning given the term in ORS 279.011."

By its terms, ORS 279.365(1) provides a private right of action for the enforcement of the prevailing wage laws. The precise nature of that right of action, however, is in dispute. Plaintiffs contend that the first sentence of the statute authorizes a claimant to seek, and a court to grant, two independent remedies. According to plaintiffs, under the first sentence of ORS 279.365(1), the court can "require [the] public agency * * * to withhold twice the wages in dispute" *and* can "require the contractor to pay the prevailing rate of wage and any deficiencies that can be shown to exist because of improper wage payments already made." Under plaintiffs' construction of the statute, the two remedies are independent and may be pursued alternatively. Here, plaintiffs seek to pursue only the latter remedy.

In response, Silco argues that the first sentence of ORS 279.365(1) does not provide a right of action against the contractor for unpaid prevailing wages independent of the right of action against the public agency to withhold twice the wages in dispute. Under Silco's construction of the statute, the latter half of the sentence simply identifies the proper disposition of the funds withheld by the public agency under the first half of the sentence. Thus, according to Silco, the *only* right of action available under ORS 279.365(1) is a right of action to require the public agency to withhold funds from the contractor. If a claimant prevails in such an action, then the public agency must withhold twice the wages in dispute and the affected workers are entitled to be paid their unpaid prevailing wages out of those withheld funds. According to Silco, the latter half of the sentence refers to requiring "the contractor" to pay the wage deficiencies, because the funds withheld by the public agency, from which the affected workers are to be paid, are the *contractor's* funds, that is, funds otherwise due the contractor under the public works contract.

■ ■   In interpreting a statute, this court's task is to determine the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Consequently, our task in this case is to determine whether the legislature intended ORS 279.365(1) to provide a right of action against the contractor for unpaid prevailing wages independent of the right of action against the public agency to

withhold twice the wages in dispute. In pursuing that inquiry, we begin with the text and context of the statute. *Id.* at 610-11. Context includes "other provisions of the same statute and other related statutes." *Id.* at 611.

Although the construction of ORS 279.365(1) offered by plaintiffs is plausible, the text and context of the statute favor Silco's construction. Plaintiffs construe the sentence in dispute as providing a "damages" remedy against the contractor independent of the "injunction" remedy against the public agency. If the statute is read in that manner, however, the injunction remedy is incomplete, because the statute fails to direct what is to be done with the funds withheld by the public agency. That is, under plaintiffs' reading of ORS 279.365(1), the statute authorizes a court to require the public agency to withhold twice the wages in dispute but, because it is "the contractor" that is directed to pay the wage deficiencies, the statute offers no directions to the court or the public agency for the disposition of the funds thus withheld.

Silco's construction of ORS 279.365(1) avoids the anomaly raised by plaintiffs' construction. Under Silco's construction, the sole action authorized by ORS 279.365(1) is an action for injunctive relief. If the claimant succeeds in showing that a contractor or subcontractor has intentionally failed or refused to pay the prevailing rate of wage, the claimant can obtain an injunction requiring the public agency to withhold, from payments due under the contract, twice the wages in dispute.[5] The claimant can then "require the contractor" to pay any unpaid prevailing wages from those withheld funds. If, as in this case, it is the *subcontractor* that failed to pay the prevailing rate of wage to its employees, the contractor can withhold funds due under the subcontract to cover the funds withheld by the public agency and paid to the employees as a result of the successful action under ORS 279.365(1).[6]

---

[5] Of course, the claimant may also be able to obtain the other injunctive remedies listed in the statute, *viz*, an injunction against the offending contractor or subcontractor to prevent future violations, ORS 279.365(1), and an injunction against the public agency to prevent the agency from contracting with the offending contractor or subcontractor, ORS 279.365(3).

[6] ORS 279.445(6)(a) provides that a contractor may include in a subcontract a provision permitting the contractor to retain funds otherwise due the subcontractor "in the event of a good faith dispute." ORS 279.445(6)(b)(C) provides that a "good

■    Although the text and context of ORS 279.365(1) favor Silco's construction of the statute, plaintiffs' construction is still plausible. Thus, it is not entirely clear from the first level of inquiry which of the proffered constructions the legislature actually intended. Accordingly, we look to legislative history to inform our inquiry into the legislative intent. *See PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611-12 (explaining methodology). When this court reaches legislative history, we consider it along with the text and context of the statute to determine whether all of those together make the legislative intent clear. *Id.* at 612.

ORS 279.365(1) was first enacted in 1983. Or Laws 1983, ch 711, § 2. At that time, the prevailing wage statutes provided several enforcement mechanisms. First, under ORS 279.356(1), a contractor or subcontractor who violated ORS 279.350 by paying less than the prevailing rate of wage to workers on a public works project could be held liable for the unpaid wages and an equal amount as liquidated damages.[7] An action to enforce that liability could be brought directly against the offending party or could be brought as an action on the contractor's bond under ORS 279.536. ORS 279.356(2).[8] Second, the Commissioner of the Bureau of Labor and Industries could initiate legal proceedings "to enjoin future failures to pay required prevailing wages * * * and to require the payment of prevailing wages * * * due employees." ORS 279.355(4).

Despite the existence of the foregoing enforcement provisions, the 1983 legislature saw a need for additional

---

faith dispute" includes "[t]hird party claims filed or reasonable evidence that claims will be filed."

[7] ORS 279.356(1) provides:

"Any contractor or subcontractor or contractor's or subcontractor's surety who violates the provisions of ORS 279.350 shall be liable to the workers affected in the amount of their unpaid minimum wages, including all fringe benefits under ORS 279.348(4), and in an additional amount equal to said unpaid wages as liquidated damages."

[8] ORS 279.356(2) provides: "Actions to enforce liability to workers under subsection (1) of this section may be brought as actions on contractors' bonds as provided for in ORS 279.536." Although the statute does not expressly state that actions to enforce liability to workers under ORS 279.356(1) may be brought directly against the offending party, such a conclusion is implicit in the statute.

enforcement mechanisms. Initial suggestions for such mechanisms surfaced during discussions in the Senate Committee on Labor on Senate Bill 89, a bill introduced at the request of the Bureau of Labor and Industries "to clarify the [prevailing wage] law in several areas by defining certain terms, and more closely aligning the law with its parent statute, the federal Davis-Bacon Act[, 40 USC § 276a *et seq.* (1988)]." Minutes, Senate Committee on Labor, March 30, 1983, Ex A. On June 3, 1983, the chair of the Senate Committee on Labor proposed using another bill, Senate Bill 93, as the vehicle for a new enforcement provision. In its initial form, the proposal, which eventually became ORS 279.365, provided as follows:

"(1) The Commissioner of the Bureau of Labor and Industries or any other person may bring suit in any court of competent jurisdiction to enjoin any public agency from contracting with or continuing payments to a contractor or subcontractor who intentionally failed or refused to pay the prevailing rate of wage to workers employed upon public works or to enjoin any contractor or subcontractor from committing future violations. The court may award to the prevailing party a reasonable attorney fee.

"(2) If an injunction is granted prohibiting the public agency from contracting with a contractor or subcontractor, the injunction shall have the same effect as a determination by the commissioner under ORS 279.361 against a contractor or subcontractor, effective for three years from the date of the final court order. The commissioner shall include the names of the contractor or subcontractor on the list published under ORS 279.361 (1)."

Minutes, Senate Committee on Labor, June 3, 1983, Ex B.

The Senate Committee on Labor discussed Senate Bill 93 at several public hearings. Throughout the committee discussions, the focus of the bill remained on providing a private right of action for obtaining injunctive relief. There was no discussion of adding a "damages" remedy against the *contractor* for unpaid prevailing wages.

At a hearing held on June 29, 1983, an assistant attorney general representing the Oregon Department of Transportation suggested that, rather than enjoining a public agency from "continuing payments," the proper remedy would be "to require the public agency to withhold twice the amount of wages in dispute," which the Department of

Transportation was already doing under its own contracts in cases of prevailing wage violations. Minutes, Senate Committee on Labor, June 29, 1983, p 6. The committee chair asked the assistant attorney general to work with the committee administrator in drafting an amendment to the bill to incorporate that suggestion.

Senate Bill 93 was next before the Senate Committee on Labor on July 1, 1983. The version presented to the committee at that time incorporated the assistant attorney general's suggestion regarding the withholding of funds by the public agency. The bill also included the wording at issue here about requiring the contractor to pay wage deficiencies. Despite the addition of that new wording to the bill, there was no discussion in the committee regarding that language, and no mention was made of providing a "damages" remedy against a contractor for unpaid prevailing wages. After a brief summary of the amendments by the committee administrator, which did not include any mention of the new wording, the committee, without further discussion, voted to recommend passage of the bill.

On the floor of the Senate, the committee member responsible for carrying the bill described the purpose of the bill as follows:

> "Senate Bill 93 provides an additional means of enforcement of the Little Davis-Bacon Act[, *i.e.*, the prevailing wage laws,] through means of a private right of action. The bill authorizes the Bureau of Labor and Industries or a private party to bring suit to require public agencies to withhold twice the wages in a dispute if it is shown that a contractor or a subcontractor in a public works contract has intentionally refused or failed to pay the prevailing wage rate."

Tape recording, Senate Floor Debate, July 7, 1983, Tape 185, Side A (statement of Senator Houck). As in the committee, no mention was made on the floor of the Senate of providing a right of action to recover unpaid prevailing wages from the contractor independent of the right of action to require the public agency to withhold twice the wages in dispute.

Following passage by the Senate, Senate Bill 93 was the subject of two hearings before the House Committee on Labor; however, none of the discussions in that committee

touched on the wording at issue here. The House passed the bill without amendment, and the bill was signed into law.

The foregoing legislative history, like the text and context of the statute, supports the construction of ORS 279.365(1) offered by Silco. Throughout the legislative process, the focus of the bill remained on providing a private right of action for *injunctive* relief. There is nothing in the legislative history, either before or after the addition of the disputed wording, to suggest that its purpose was to shift the focus of the bill and to provide a right of action against the contractor for the recovery of unpaid prevailing wages, independent of the right of action for injunctive relief.[9] To the contrary, the legislative history is consonant with Silco's contention that the purpose of the wording at issue was to describe what was to be done with the funds withheld by the public agency.

■ ■ Despite the foregoing, plaintiffs urge this court to adopt their construction of the statute, rather than Silco's, because, according to plaintiffs, "remedial statutes are to be construed liberally in order to effect the purpose of the statute." *See Newell v. Taylor et al*, 212 Or 522, 527-28, 321 P2d 294 (1958) (so stating with regard to the Workers' Compensation Law). This court is not at liberty, however, to read into a remedial statute a remedy that the legislature did not intend to create. *See, e.g., Sunshine Dairy v. Peterson et al.*, 183 Or 305, 317, 193 P2d 543 (1948) ("A remedial statute should receive liberal construction so as to afford all the relief within the power of the court which the language of the act indicates that the legislature *intended* to grant.") (emphasis supplied); *cf. Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 US 11, 19, 100 S Ct 242, 62 L Ed 2d 146 (1979) ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). In this case, text, context, and legislative history all support Silco's contention that the legislature did not intend ORS 279.365(1) to provide a right of action against the contractor for unpaid

---

[9] Indeed, had the legislature expressly considered that point, it probably would have thought that providing such a remedy was unnecessary. As discussed above, at the time that Senate Bill 93 was under consideration, ORS 279.356 already provided for the recovery of unpaid prevailing wages from the offending party or in an action on the contractor's bond. Thus, there was no apparent need for an additional "damages" remedy.

prevailing wages, independent of the right of action against the public agency to withhold twice the wages in dispute. Consequently, we hold that no such right of action against the contractor is available under that statute.

■    It follows from the foregoing that plaintiffs were not entitled to maintain their claims for unpaid prevailing wages against Silco under ORS 279.365(1). The trial court was correct in granting summary judgment to Silco on those claims, and the Court of Appeals correctly affirmed that aspect of the trial court's judgment.

■    We now proceed to consider plaintiffs' claims against Silco as intended third-party beneficiaries of the prevailing wage provisions in the public works contracts between Silco and the public agencies. As this court recently noted, under Oregon case law, there are three categories of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. *Sisters of St. Joseph v. Russell*, 318 Or 370, 374-75, 867 P2d 1377 (1994). Generally, "the first two categories of beneficiaries are entitled to enforce directly contractual promises intended to be for their benefit, even though they are strangers to the contract. Incidental beneficiaries are not so entitled." *Id.* at 375.

Plaintiffs base their claims as intended third-party beneficiaries on the prevailing wage provisions required to appear in public works contracts by ORS 279.352. That statute provides:

> "The specifications for every contract for a public work shall contain a provision stating the existing prevailing rate of wage which may be paid to workers in each trade or occupation required for such public work employed in the performance of the contract either by the contractor or subcontractor or other person doing or contracting to do the whole or any part of the work contemplated by the contract, and *the contract shall contain a provision that such workers shall be paid not less than such specified minimum hourly rate of wage.*"

(Emphasis supplied.)

Plaintiffs contend that they are intended third-party beneficiaries of the prevailing wage provisions in the public works contracts, because those provisions were "designed to

directly benefit [plaintiffs] by assuring that they would not be paid substandard wages." Silco does not dispute the general proposition that the prevailing wage provisions required by ORS 279.352 were intended for the benefit of workers like plaintiffs. Silco contends, however, that those prevailing wage provisions do not make a general contractor an insurer, required to pay wage deficiencies to the employees of a subcontractor in the event that the subcontractor fails to pay its employees the prevailing rate of wage. In essence, Silco contends that, even if plaintiffs *are* intended third-party beneficiaries of the prevailing wage provisions, plaintiffs are not entitled to recover from Silco in this case, because Silco did not breach any promise to the public agencies contained in those provisions.

■ The foregoing argument focuses on the nature of the obligation imposed on Silco by the prevailing wage provisions in the public works contracts. The actual language of the public works contracts at issue in this case is not in the record. Ordinarily, such an omission would preclude judicial review, because the interpretation of a written contract necessarily must be based on the terms of the writing itself. In this case, however, the parties agree and have litigated the case on the understanding that the public works contracts contained prevailing wage provisions that were intended to meet the requirements of ORS 279.352. Consequently, we can resolve the issue in this case without reference to the specific words of the contracts, because our task is to determine what obligation the legislature intended to impose on general contractors by enacting ORS 279.352. *Cf. Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 244-45, 855 P2d 626 (1993) (where language appears in a written contract because the legislature requires it, the court must determine the meaning intended by the legislature).

■ As noted above, ORS 279.352 requires every public works contract to contain a provision stating "that * * * workers [employed in the performance of the contract] shall be paid not less than [the] specified minimum hourly rate of wage," that is, the prevailing rate of wage. Plaintiffs characterize the obligation contained in that provision as an obligation of the general contractor to pay directly to the employees of a subcontractor any prevailing wages left unpaid by the

subcontractor. Silco, on the other hand, contends that a general contractor's only obligation under the prevailing wage provisions required by ORS 279.352, at least with regard to the employees of a subcontractor, is to include similar provisions in the subcontract, thereby ensuring that the subcontractor is contractually bound to pay its employees the prevailing rate of wage.[10]

We think that Silco has the better of this argument, as well. The parties appear to recognize that, if plaintiffs have a third-party beneficiary claim, it is because of the nature of the promise that Silco made to the various public contracting agencies. That is, Silco's promise to those agencies must have been that *it would pay* the prevailing rate to its subcontractors' employees. But we think that it is clear from ORS 279.350, when read in light of the provisions of ORS 279.354, that Silco made no such promise.

ORS 279.354 is the statute that provides the initial enforcement mechanism for the prevailing wage statute scheme, by requiring certification by employers that they are paying the rate that they promised to pay. That statute provides in part:

"(1) The contractor or the contractor's surety and every subcontractor or the subcontractor's surety shall file certified statements with the public contracting agency in writing * * *, certifying the hourly rate of wage paid each worker which the contractor or the subcontractor has employed upon such public work, and further certifying that no worker employed upon such public work has been paid less than the prevailing rate of wage or less than the minimum hourly rate of wage specified in the contract, which certificate and statement shall be verified by the oath of the contractor or the contractor's surety or subcontractor or the subcontractor's surety that the contractor or subcontractor has read such statement and certificate and knows the contents thereof and that the same is true to the contractor or subcontractor's knowledge. The certified statements shall set out accurately and completely the payroll records for the prior week including the name and address of each worker, the worker's

---

[10] Silco acknowledges that it had the additional obligation under the prevailing wage provisions of the public works contracts to pay its *own* employees the prevailing wage.

correct classification, rate of pay, daily and weekly number of hours worked, deductions made and actual wages paid.

· "(2)   Each certified statement required by subsection (1) of this section shall be delivered or mailed by the contractor or subcontractor to the public contracting agency. * * *

"(* * * * *

"(3)   Each contractor or subcontractor shall preserve the certified statements for a period of three years from the date of completion of the contract."

Another statute authorizes the Commissioner of the Bureau of Labor and Industries to enter the offices of contractors and subcontractors to inspect records in order to ensure ongoing compliance with ORS 279.350. ORS 279.355(1) and (2).

From the foregoing, it will be seen that, although ORS 279.350 imposes on prime contractors a duty to see to it that each of their subcontractors promises to pay the prevailing wage rates for its workers, it is the subcontractor itself that is required to certify to the public contracting agency that it has done so. Contractors are given no authority to enforce the obligation that they have seen to it was assumed by their subcontractors; that authority is reserved to the Commissioner. Neither are the pertinent records either directed to the contractor or made available for its inspection. Again, the right to receive copies of the records and the right to inspect belong to the public contracting agency and to the Commissioner, respectively.

Assuming, as we must do in this case, that the contractual provisions in the subcontractor contracts that carry out Silco's obligations under ORS 279.350 state no greater or different obligations of the contracting parties than do the statutes that we have reviewed, we find no basis for imposing on Silco an obligation to insure the payment of plaintiffs' wages. Silco's obligation to plaintiffs was fulfilled when it required its subcontractor to promise to pay the prevailing wage rate. Plaintiffs, of course, were then the third-party beneficiaries of that promise made *by their own employer, the subcontractor,* but that fact cannot be used somehow to transform the promisee — Silco — into an additional promisor.

It follows that plaintiffs were not entitled to maintain their claims for unpaid prevailing wages against Silco as intended third-party beneficiaries of the prevailing wage provisions in the public works contracts. As with plaintiffs' statutory claims, the trial court correctly granted summary judgment to Silco on plaintiffs' third-party beneficiary claims, and the Court of Appeals correctly affirmed that aspect of the trial court's judgment.

The decision of the Court of Appeals is affirmed, in part on different grounds. The judgment of the circuit court is affirmed.